NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JON ALIN, individually and on behalf of all others similarly situated, <br><br>               Plaintiff, <br><br>     v. <br><br> AMERICAN HONDA MOTOR COMPANY, Inc. <br><br>            Defendant. | Civ. Action No. 08-4825  (KSH) <br><br><br> **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

## I.  INTRODUCTION

Before the Court is a motion [D.E. 9] under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") brought by defendant, American Honda Motor Company, Inc. ("Honda"), seeking to dismiss plaintiff Jon Alin's putative class action lawsuit that he filed on behalf of himself and a class of individuals who purchased or leased Hondas and Acuras between 2000 and 2009.  In bringing his suit under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, Alin alleges that Honda breached an express manufacturer's warranty, the implied warranty of merchantability, and the covenant of good faith and fair dealing by knowingly selling and leasing vehicles with defective air conditioners and refusing to cover the costs of repairing them.  He also claims that by those same actions, Honda was unjustly enriched, committed common law fraud, and violated the New Jersey Consumer Fraud Act ("CFA").  Honda argues that Alin's allegations fail to state any cognizable claim for relief.

1

## II.  FACTUAL BACKGROUND

The following facts are drawn from the complaint.  [D.E. 1.]  In January 2006, Alin leased a 2006 Honda Odyssey[1] from an authorized Honda dealer in Denville, New Jersey. (Compl. ¶ 18.)  Honda provided an express warranty covering the vehicle for "3 years or 36,000 miles, whichever comes first."  (Affidavit of Daniel Crowe ("Crowe Aff."), Exh. 1 at 13.)[2]  The section entitled "Warranty Coverage" states:

> Honda will repair or replace any part that is defective in material or workmanship under normal use.  See Proper Operation on Page 40.  All repairs/replacements made under this warranty are free of charge.  The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires.

(Crowe Aff., Exh. 1 at 13.)

Alin alleges that despite being new, his vehicle, and all other Class Vehicles[3], contained a defective condenser, compressor and/or air conditioning unit (hereinafter, these car parts will be collectively referred to as the "A/C system").  (Compl. ¶ 19.)  While still within the warranty period, the A/C system in Alin's Odyssey stopped working, and he brought the car to an authorized Honda dealer and service center in West Caldwell, New Jersey.  (*Id.*)  Alin claims that a Honda technician at the service center told him that his car "was experiencing a common problem," and that the condenser had to be replaced due to damage it incurred on the road from a rock or debris.  (*Id.*)

---

[1]      In his complaint, Alin alleges that he leased a 2007 Honda Odyssey.  In its brief in support of its motion to dismiss, Honda points out that the 2007 Honda Odyssey was unavailable in January 2006.  (Def.'s Br. at 1, n, 1.)  In his opposition brief, Alin acknowledges the error in the complaint and agrees that he leased a 2006 Honda Odyssey. (Pl.'s Br. at 1, n. 1.)

[2]      Normally, a motion to dismiss may only include allegations in the complaint and appended documents; however, the Third Circuit has held that a court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

[3]      Alin defines "Class Vehicles" as Accord, Civic, Odyssey, Element, CR-V, Fit, Plot, Ridgeline, S2000, RSX, TSX, TL, RL, RDX, MDX, and all other Honda and Acura models produced from 2000 to the present that have defective condensers, compressors and/or air condition.  (Compl. ¶ 16.)

When Alin made a claim under the warranty, Honda's customer service representatives and service personnel denied it, telling him the damage came from "outside influence."  (*Id*. ¶ 20.)  As a result, he paid for the repair of the A/C system himself.  (*Id*.)

Alin brings eight causes of action:  breach of express warranty (Count I); breach of the implied warranty of merchantability (Count II); breach of the duty of good faith and fair dealing (Count III); negligent misrepresentation (Count IV); unjust enrichment (Count V); violations of the New Jersey Consumer Fraud Act and common law fraud (Counts VI, VII); and a claim for injunctive relief (Count VIII).  (Compl. ¶¶ 26-74.)  He invokes federal jurisdiction under CAFA. 28 U.S.C. § 1332.

Honda has filed a motion to dismiss under FRCP 12(b)(6), arguing that Alin failed to plead "anything but 'bald assertions' and 'legal conclusions,'" and that he did not allege sufficient facts under FRCP 9(b) to sustain his claims for fraud.  (Def.'s Br. 1.)

## III.  STANDARD OF REVIEW

In deciding a motion to dismiss under FRCP 12(b)(6), a trial court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  A complaint should be dismissed if the plaintiff's allegations, taken as true, fail to state a claim.  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 (3d Cir. 1994).

A plaintiff must now plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 511, 555 (2007) (internal citations omitted).   The Third Circuit has interpreted this stricter pleading requirement as a "heightened form of pleading, requiring a plaintiff to plead more than the

3

possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

> *Fowler* set out a two-part analysis for district courts to follow:
>
> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler*, 578 F.3d at 210-11 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)).  The reviewing court undertakes a "'context-specific task'" when considering the plaintiff's factual allegations, "'draw[ing] on its judicial experience and common sense.'"  *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 129 S. Ct. at 1949).

Alin's CFA claims are subject to FRCP 9(b), which requires parties alleging fraud to state the circumstances constituting the fraud "with particularity."  *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007).  The complaint must describe the "circumstances of the alleged fraud with precise allegations of date, time, or place.  Alternatively, plaintiffs must '[inject] precision and some measure of substantiation into their allegations of fraud.'"  *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 29 F. Supp. 2d 494, 511 (D.N.J. 1999) (*quoting Seville Indust. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (internal citations omitted).

## IV. DISCUSSION

### 1. Express Warranty

Paragraph 27 of the complaint alleges that Honda made four express warranties:

1) At all relevant times, Honda has continuously designed, manufactured, distributed, marketed, sold and leased the Class Vehicles and warranted that each vehicle was free of defects.

4

    2) Honda expressly warranted to the general public and [Alin] that the Class Vehicles were safe and properly designed and manufactured.

    3) Honda expressly warranted that these vehicles were safe to use for ordinary and expected uses for a passenger vehicle [and]

    4) Honda warranted to the general public and to [Alin] that the construction, design and manufacture of the Class Vehicles were appropriate and safe.

(Compl. ¶ 27) (enumeration added for clarity.)

Alin claims that Honda violated these express warranties by: (1) leasing him a vehicle with a defective A/C system that prematurely failed and generated replacement costs; (2) failing to warn him of the problems associated with the A/C system; and (3) designing and selling vehicles that were defective in workmanship, material and manufacturing. (*Id.* ¶¶ 28-29.)

The Uniform Commercial Code ("UCC"), incorporated into statutory law, governs commercial transactions in New Jersey. *See* N.J.S.A. 12A:1-102(2)(b). The UCC defines "express warranties" as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

N.J.S.A. 12A:2-313(1); *see also Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 824 (3d Cir. 1999) (an express warranty is created when the "seller promises that the good sold will conform to some standard which may be established by a model, a level of quality, an assurance, a description or a list of specifications.").

On page 6 of his brief, Alin argues that Honda violated an express warranty by failing to repair a defect in his vehicle under warranty and within the warranty period. He states, "That is

all plaintiff is seeking here – for Honda to live up to its warranty and to pay for the repair/replacement of the defective A/C system." (*Id.* at 7.)  By this statement, it appears that Alin is not asserting that Honda expressly warranted that its cars were defect-free, properly designed, or safe to use for their ordinary purposes as passenger vehicles.

But at oral argument, counsel for Alin was explicit that "we're talking about a part that fails and they know it fails. . . .  For whatever reason they've chosen to place the portions of the condenser unit that are at risk for pebbles that they know will be hitting the bottom of a car—any car at a closer point to the road and using thinner materials than they normally use."  (Transcript of Oral Argument, Dec. 18, 2009, 21:3-4, 11-16.)

In moving to dismiss, Honda relies on *Brothers v. Hewlett Packard Co.*, 2007 WL 485979 (N.D. Cal. Feb. 12, 2007), where the district court granted a motion to dismiss by holding that design defects are distinguishable from a defects in materials or workmanship under normal use.  "Unlike defects in materials or workmanship, a design defect is manufactured in accordance with the product's intended specifications."  *Id.* at *4.  Honda also relies on *Contino v. BMW of North America. LLC*, 2008 WL 2940515 (D.N.J. July 29, 2008), where Judge Cavanaugh adopted plaintiffs' own characterization of their claim that the alleged defect in BMW vehicles preventing them from going into reverse was a "design defect," and thus was not covered by the express manufacturer's warranty insuring against defects in materials and workmanship.

Honda relies as well on *Grupo Sistemas Integrales de Telecomunicacion S.A.de C.v. v. AT&T Comm'ns, Inc.*, 1996 WL 312535, at *6 (S.D.N.Y. 1996), where the plaintiff argued that AT&T breached an express warranty that its telephone satellite equipment would be "free from defects in materials and workmanship" after the product failed to function in a shared network.

6

AT&T's warranty specifically excluded purported breaches of the warranty of fitness for a particular use.  In deciding AT&T's motion to dismiss the breach of express warranty claim, the district court construed the warranty that the  product would be "free from defects in materials and workmanship" excluded claims of *design* defect – "which like the 'warranty of fitness' claims, essentially allege that the equipment was unfit for its intended purpose." *Id.* at *7 (emphasis in original).

Honda also cites to *Cambridge Engineering, Inc. v. Robertshaw Controls Co.*, 966 F. Supp. 1509, 1524 (E.D. Mo. 1997), where a furnace manufacturer sued a parts supplier for breach of express warranty after it purchased faulty hot surface ignition controls that it intended to use for the production of its line of furnaces.  The seller's manufacturer's warranty stated that products sold "shall be free from defects in material and workmanship." *Id.* at 1515.  Following a bench trial, the district court distinguished between design defect claims and materials/workmanship defect claims, holding that plaintiff "failed to prove that the . . . control modules failed on account of defects in their material or workmanship.  Rather, the quick cycle problems may have resulted from the design of the control's circuit." *Id.*  Accordingly, the court found against the furnace manufacturer on its breach of express warranty claim.

Finally, Honda argues in its brief that plaintiff's construction of the warranty would "eliminate time and mileage limits, as a consumer would need only allege that the design of a component rendered it defective upon delivery, even if the defect did not manifest until outside the warranty period," and would "subject every design compromise made to produce cars for budget-conscious consumers to a potential warranty claim."  (Def.'s Reply 7–8.)

This particular argument, as well as Honda's reliance on the above cases, assumes that Alin's allegations constitute a design defect claim.  But a critical contested issue in this lawsuit is

whether Alin's claims actually relate solely to a design defect.  The complaint does not require this characterization.  In paragraph 5, Alin alleges that the "the condenser is manufactured out of materials that cannot withstand the force of impact of rocks, pebbles and other small road debris that every vehicle encounters under normal driving conditions.  As a result, the condensers are easily damaged, which causes the A/C system to malfunction and results in costly repairs." The question naturally arises whether at this stage of the litigation, the court is in a position to accept Honda's contention that the A/C system is a design defect.

Judges have declined to dismiss in favor of letting discovery go forward so the plaintiff could develop the basis for the claim, as some of the authority Honda relies on demonstrates.  In *Grupo Sistemas*, 1996 WL 312535, at *6, the trial court determined that the allegations of the complaint left open the possibility that after discover the plaintiff will be able show that the claim relates to defects in materials and workmanship.  The court held that the nature of the warranty claim was "a proper subject for a motion for summary judgment, or for trial, not for [a] motion to dismiss."  *Id.*  In *Cambridge*, the court decided that plaintiff did not prove that his breach of warranty claim was covered under the manufacturer's warranty, but only after a fully-litigated bench trial.

Alin's authority relates to Honda's argument that his complaint is too bare-boned to survive pleading standards.  He relies on *Sheris v. Nissan North America Inc.*, 2008 WL 2354908, at *3–4 (D.N.J. June 3, 2008), where the plaintiff alleged that the width of his G35 Nissan's brake rotors caused premature brake failure under normal driving conditions.  The defendant refused to cover the costs of repair because it determined that the problem was due to "normal wear and tear" and not "defects in material and workmanship."  *Id.*  In deciding whether the breach of express warranty claim was adequately pleaded, Judge Walls held that

> [i]n light of these factual allegations, the two main issues are: (1) whether the type of problem Plaintiff experience [sic] with his G35 is covered under the Warranty as "defects in materials or workmanship" or excluded under the Warranty as "normal wear and tear" or "normal maintenance services"; and (2) whether that problem was premature. *These issues are better dealt with at the summary judgment stage when the parties can present evidence* to prove if a defect in material and design caused the premature wearing of the brake pads and rotors or whether it was normal wear and tear.

*Id.* at *4 (emphasis added).

Alin cites to another case involving car parts and express warranties, *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505 (D.N.J. 2008), where plaintiffs claimed that Volkswagen breached a Limited Warranty and a powertrain warranty that both promised repair of "defects in materials and workmanship." Volkswagen refused to reimburse plaintiffs for the costs of repairing flood-damaged engines that were allegedly damaged by defective engine parts and defectively-designed pollen-filters. Because Volkswagen's Limited Warranty covering all car parts had expired, Judge Hochberg dismissed plaintiffs' claims that Volkswagen was liable under the warranty for damages caused by the design defect in the pollen-filter. Judge Hochberg preserved the defect claim under the powertrain warranty, however, because the warranty was still in effect when the defect appeared, and the allegedly defective parts were explicitly covered by its provisions. That claim went forward "on the limited question of whether the location, housing and placement of the powertrain, transmission, and TCM [transmission control module], allow[ed] the powertrain, transmission, and TCM to be damaged by water entering the interior of the vehicles, and whether this constitutes a defect in material or workmanship under the extended warranty." *Id.* at 523 (internal quotations omitted).

In *Dewey*, the powertrain warranty covered defects in materials and workmanship. So does Honda's manufacturer's warranty. The *Dewey* plaintiffs sought to prove that Volkswagen's warranty promising to repair engine parts that contained "defects in materials and workmanship"

9

covered the allegedly defective location, housing and placement of the powertrain.  Although Alin is concerned with an A/C system, he is alleging comparable defects.

On the issue of whether he has pleaded a design defect, Alin cites to *Koulajian v. Trek Bicycle Corp.*, 1992 WL 28884 (S.D.N.Y. Feb. 11, 1992), and *In re Saturn l-Series Timing Chain Products Liability Litigation*, 2008 WL 4866604, at *14 (D.Neb. Nov. 7, 2008).   In *Koulajian*, the district court refused to grant summary judgment because the defendant presented no authority as to why allegations of design defects were distinct from those of defects in materials or workmanship.  1992 WL 28884, at *2.  The court in *In re Saturn* relied on *Koulajian* in denying a motion to dismiss plaintiffs' express warranty claim and held that "design is integrated into each step of the manufacturing process and affects both materials and workmanship." 2008 WL 4866604, at *14.  These decisions, like those Honda relies on, are not binding authority.  However, the reasoning is consistent with established standards for judicial review of a complaint on a motion to dismiss, as the Court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom."  *Morse*, 132 F.3d at 906.

Honda has not demonstrated that the complaint as drafted fails to allege Alin's theory that the problems related to the A/C system are caused by defects in materials or workmanship.   At the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives.  Accordingly, Honda's motion to dismiss Count I is denied.  The Court addresses the other counts of the complaint in the order the parties have followed in their briefs.

### 2. New Jersey CFA claim

In Count VI, Alin alleges that Honda committed statutory consumer fraud under the CFA, N.J.S.A. 56:8-19, "[b]y advertising, promoting, distributing, supplying, selling, and leasing the Class Vehicles, when Defendants knew or should have known that each of the Class Vehicles' condensers, compressors, and/or A/C systems were [sic] or could be defective." (Compl. ¶ 64.)  He further avers that Honda "engaged in an unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission" in violation of the statute.  (*Id.*)  At argument, Alin's counsel was explicit that his CFA claim rests on the defect that Honda knew of when the Class Vehicles rolled off the assembly line.

The CFA provides a cause of action to "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act. . . ."  N.J.S.A. 56:8-19.  It allows private plaintiffs to recover for any "ascertainable loss," and imposes mandatory treble damages and attorney's fees.  *Id.*  CFA claims are subject to FRCP 9(b), which requires parties alleging fraud to state the circumstances constituting the fraud "with particularity."  *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007).

The "unlawful conduct"[4] required in a CFA claim may be an affirmative act, a knowing omission, or a regulatory violation.  *See Parker v. Howmedica Osteonics Corp.*, 2008 WL

---

4  N.J.S.A. 56:8-2 defines "unlawful conduct" as
> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise  . . . whether or not any person has in fact been misled, deceived or damaged thereby[.] . . .

141628, at *2 (D.N.J. Jan. 14, 2008) (Linares, J.).  Where "the alleged consumer fraud consists of an omission the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud."  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994).

The CFA "requires that substantial aggravating circumstances be shown."  *Suber v. Chrysler Corp.*, 104 F.3d 578 (3d Cir. 1997) (finding that plaintiff adequately pleaded "substantial aggravating circumstances" by alleging that in spite of Chrysler's bulletin advising of the need to repair suspension problems in the van's model and year, defendants denied that plaintiff's van had suspension problems for months before eventually conceding the fact); *see also Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 507–08 (D.N.J. 1999) (finding defendant, who instructed plaintiff to stop using a product, after it twice issued and recalled the product, may have created sufficient "substantial aggravating circumstances" to escalate a breach of contract claim to a CFA fraud claim); *cf. DiNicola v. Watchung Furniture's Country Manor*, 232 N.J. Super. 69, 72 (App. Div. 1989), *superseded on other grounds by* N.J.A.C. 13:45A-5.1(c) (finding that retailer's breach of warranty in supplying defective furniture and denying that defect existed was not unconscionable).

Honda argues that the complaint fails to meet pleading requirements because: (1) Alin did not allege "substantial aggravating circumstances" in addition to the purported breach of contract; and (2) he did not allege specific facts to show circumstances surrounding the alleged fraud, as FRCP 9(b) requires.  (Def.'s Reply 12; Def.'s Br. 18.)

    a.  Whether Alin Properly Alleged the "Substantial Aggravating Circumstances" Necessary for a Breach of Contract Claim to also Constitute a CFA Claim

Honda contends that Alin's CFA claim "boils down to an assertion that the defect in his vehicle should have been covered under warranty."  (Def.'s Reply 14.)  Although Alin accepts that a "breach of warranty, or any breach of contract, is not *per se* unfair or unconscionable . . .

and a breach of warranty alone does not violate a consumer protection statute," *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994), he submits that his allegations that Honda knowingly concealed defects in the Class Vehicles sufficiently state a CFA violation.  (*See* Pl.'s Br. 22.)

Honda relies on *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11, 28–31 (App. Div. 1985), where the plaintiff purchased a tow truck from Freuhauf Corp., a custom tow-truck manufacturer and dealer.  Included in the sale of the truck were Freuhauf's limited warranty covering defects in materials or workmanship and a warranty provided by General Motors and its authorized parts dealer, Beyer Brothers GMC Corp. ("Beyer Brothers"), covering the engine Freuhauf bought for the vehicle.  *Id.* at 14.  When plaintiff experienced mechanical problems on the day of delivery, Freuhauf dispatched Beyer Brother to repair the truck, which broke down a second time.  Upon further inspection, Beyer Brothers concluded that Freuhauf was responsible for the engine malfunction and resulting costs because it altered the engine while assembling the truck.  *Id.*  Freuhauf denied Beyer Brother's assertion and repeatedly refused to cover the repair costs under its warranty.  *Id.*  After a jury found Freuhauf liable for breach of contract and a CFA violation, Freuhauf successfully appealed the trial court's decision to present the CFA claim to the jury.  *Id.* at 13.  The appellate division held as follows:

> We do not deem that the disavowal by Fruehauf, offensive though it may be, is deplorable enough to constitute an "unconscionable commercial practice" under the Consumer Fraud Act nor do we deem that the conduct, unjustified as it may be, transcends an "unconscionable consumer practice" under the facts and circumstances of this commercial transaction. There is no question but that when Fruehauf "disowned the problem," it breached its warranty but this does not equate with a consumer fraud. This is not to say, however, that a breach of warranty under a sales agreement may not, under given circumstances, also violate the Consumer Fraud Act.

*Id.* at 31.

In response, Alin argues that, as pleaded, Honda's concealment of his vehicle's known defects and its false assurances to repair them constitute an "unconscionable" commercial

practice rising to a sufficient level of misconduct for an actionable CFA claim.  (Pl.'s Br. 21-23.)

As authority he relies on *Perth Amboy Iron Works, Inc. v. American Home Assurance Co.*, 226

N.J.Super. 200 (App. Div. 1988), and *Strzakowlski v. General Motors Corp.*, 2005 WL 2001912

(D.N.J. Aug. 16, 2005).[5]  In *Perth Amboy*, the appellate division held that a CFA claim alleging a

yacht engine manufacturer's concealment of known safety and operational hazards and false

promises that it repaired them was improperly dismissed by the trial court and should have gone

to a jury.  226 N.J. Super. at 211–12.  In *Strzakowlski*, the district court found that the plaintiff

sufficiently alleged aggravating circumstances by contending that defendant knowingly

concealed information about a car's engine defect and implemented a repair procedure under the

guise of a "Customer Satisfaction Program" to hide detectable manifestations of the defects until

a warranty period expired.  2005 WL 2001912, at *5.  Alin argues that Honda's "widespread

practice of promising to repair [] defects as part of its marketing of the vehicle" despite its

intentional failure to honor its warranty or disclose defects of which it "knew or should have

known," constitutes substantial aggravating factors. (Pls.' Br. 22 – 23 (*citing* Compl. ¶¶ 27, 28,

69).)

A fair reading of the complaint establishes that Alin has alleged that Honda affirmatively

acted in concealing a flaw in its vehicles.  Throughout, he avers that Honda knew or should have

known of the various defects in the condensers and compressors of the Class Vehicles, and

*intentionally* failed to disclose the defects to plaintiff.  (*See* Compl. ¶¶ 32, 44, 59, 64.)  Alin's

allegations, similar to those made in *Strzakowlski*, are that Honda implemented its warranty

policy with the intent that it would not honor it when damages stemming from the defective A/C

systems arose.  (*See id.* ¶ 20.)

---

[5]  The Court will examine *Strzakowlski*, 2005 WL 2001912, more fully in Section III.2.b in order to determine
whether Alin's CFA claim meets FRCP 9(b)'s heightened pleading requirement.

As a practical matter, discovery about the nature of the alleged defect in the A/C systems will clarify the central issues raised in Honda's motion to dismiss the CFA count because it bears on whether the company engaged in an unlawful practice by refusing to repair A/C systems that went bad.   Based on its review of the cases and the arguments in the briefs and in court (including Honda's assertions that "there's nothing in the warranty that suggests that every element of this car is somehow the gold-plated best it could possibly be" (Transcript 13:10-12) and a different choice of materials and placement would "change the cost of the vehicle" (*id.* 14:21)), the Court will not dismiss the CFA count on grounds that substantial aggravating factors are not pleaded.  The Court moves on to examine the specificity of Alin's allegations of Honda's unlawful conduct.

> b.  Whether Alin Pleaded his CFA Claim with the Level of Particularity Required by FRCP 9(b).

Honda argues that Alin's allegations do not meet FRCP Rule 9(b)'s heightened pleadings requirement.  This requirement may be satisfied "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud."  *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004) (internal quotations omitted).  Honda likens Alin's allegations to those in *Rait v. Sears, Robuck & Co.*, 2009 WL 250309 (D.N.J. Feb. 3, 2009), where plaintiff brought a CFA claim against Sears for its failure to disclose defects in its garage door opener to consumers.  *Id.*  In deciding whether to grant defendants' motion to dismiss for failure to plead a viable CFA claim, Judge Linares analyzed plaintiff's allegations that:

> Sears was aware of the defective nature of the design;
>
> Defendants . . . intended to place inferior products . . . on the market . . . and seek profit from charging Plaintiff . . . additional and excessive fees for service visits . . . to repair and replace these inferior products;

> Defendants violated the CFA by failing to properly disclose to Plaintiff and members of the Class, the terms, conditions, and fees associated with service and repairs to their Sears Craftsmen brand garage door openers; and

> Defendants . . . knowingly ma[de] material misrepresentations and/or omissions regarding the quality of the Sears Craftsmen garage door openers and the repair policy and fees associated with malfunctioning and/or defective units. . . .

*Id.* at *4.

After finding that these assertions in the complaint "d[id] not inject sufficient precision into the allegations of fraud" and lacked the requisite "factual detail," the court dismissed the CFA claim for failure to meet FRCP 9(b)'s heightened pleading requirement.  Honda asserts that Alin's allegations are "almost identical to those in *Rait*" in that he:  (1) alleged that Honda misrepresented the scope of coverage without identifying how; (2) contended that Honda knew or should have known of the A/C system defects without specifying how or when it acquired such knowledge; (3) and claimed that Honda did not disclose the defects without articulating where such a duty to disclose could have arisen.  (Def.'s Reply 13.)

In response, Alin asserts that his complaint passes muster under FRCP 9(b) because it placed Honda on notice of the precise misconduct with which it was charged.  *See Service Indus. Mach. Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  He argues that he alleged in detail precisely how Honda misrepresented the scope of its warranty, cited a fact – the information given by the technician at the dealership – showing Honda's knowledge of the defects, and claimed that Honda intentionally concealed the defect from its consumers.

Alin contends that the substance of the complaint closely matches what the court preserved in the *Strzakowlski* opinion, in which the plaintiff alleged that General Motors manufactured and sold approximately four million defective vehicles between 2000 and 2003 with a defective engine part, and instituted a customer satisfaction program ("CSP") to continue

its plan to deceive consumers by "deliberately crafting a repair procedure that would only mask visible signs of the defect rather than properly repair the underlying problem."   2005 WL 2001912, at *1.  In *Strzakowlski*, Judge Rodriguez found that the complaint "details very clearly the nature of Plaintiff's fraud claim, including the specific conduct and omissions alleged to constitute fraud.  Further, it specifies the general dates of the alleged fraud insomuch as it provides the years during which GM sold defective K engine vehicles and the month and year during which GM initiated the CSP" allegedly designed to continue the fraud.  *Id.* at *6.

Alin's complaint alleges that: from 1998 to the present, Honda manufactured, leased and sold vehicles that contained defective A/C systems; the A/C systems are defective because they are "manufactured out of materials that cannot withstand the force of impact of rocks, pebbles, and other small debris that every vehicle encounters during normal driving conditions"; the compressors are defective because they "fail prematurely, contaminating the entire A/C [s]ystem and requiring replacement of most components and high repair costs"; Honda knew or should have known of the defects at the time of sale or lease, but failed to disclose them; and Honda promised to repair such defects when it issued the warranty at the time of sale or lease, and thereafter wrongfully refused to honor its warranty.  (*See* Compl. ¶¶ 1-8.)   Furthermore, Alin alleges specific facts supporting Honda's awareness of the problem in paragraph 19, where he states that the Honda technician advised that he "was experiencing a common problem." Accordingly, Honda's motion to dismiss Count VI is denied.

### 3.  Common Law Fraud

Count VII, which sets forth Alin's common law fraud charge, is also subject to FRCP 9(b)'s particularity requirement.  *See Lum*, 361 F.3d at 222–23.  In addition to the same basic elements of a CFA claim, common law fraud also requires proof of reliance by plaintiff.  *See*

*Rait*, 2009 WL 250309, *at 4 (*citing Cox*, 647 N.J. at 462).  A viable common law fraud claim would thus require Alin to plead that:  (1) Honda made a false representation or knowing omission of a presently existing or past fact; (2) Honda knew its representation was false or incomplete; (3) Honda intended for Alin to rely on the representation or omission; (4) Alin reasonably relied on Honda's misrepresentation or omission, and (5) as a result, he was harmed.  *See Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).  In Count VII, Alin properly restated his CFA allegations and additionally averred that he relied on Honda's misrepresentations.  For the same reasons stated in the foregoing section, the Court finds that Alin adequately alleged each of the essential elements of a common law fraud claim and Honda's motion to dismiss Count VII is likewise denied.

### 4.  Breach of Good Faith and Fair Dealing Claim

In Count III, Alin alleges that Honda breached the implied duty of good faith and fair dealing under its express warranty "by failing to notify Plaintiffs and members of the Plaintiff Class of the defect(s) in the Class Vehicles, and failing to fully and properly repair the defect(s) and resulting damage to the Class Vehicles at no expense to Plaintiffs."  (Compl. ¶ 47.)   Alin also alleges that Honda's breach was "intentional, malicious, and with willful and wanton disregard of the rights and interests of Plaintiffs and members of the Plaintiff Class."  (*Id.* ¶ 48.)

The covenant of good faith and fair dealing is implied in all contracts.  *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997).  It mandates that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Id.*  Although this covenant cannot override an express term in a contract, it "has been utilized to allow redress for the bad faith performance of an agreement even when the

18

defendant has not breached any express term." *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 257 (App. Div. 2002); *see also Wilson v. Amerada Hess Corp.*, 168 N.J. 236 (2001).

Under New Jersey law, a claim for breach of the duty of good faith and fair dealing requires a showing of "bad motive or intention," *Wilson*, 168 N.J. at 236, though at the pleading stage all that is required is an allegation of bad faith. *See Seidenberg*, 348 N.J. Super. at 263. In *Seidenberg*, sellers of stock in insurance brokers brought an action against a buyer for breaching the covenant of good faith and fair dealing in its intentional failure to adequately perform under the contract. The appellate division found that the complaint adequately pleaded bad faith at the pleading stage solely by "alleging that plaintiffs 'suffered as a result of . . . defendant's bad faith' and that defendant's actions were 'wanton and willful and without privilege or right.'"

New Jersey recognizes causes of actions for breach of good faith and fair dealing to remedy three types of situations:

> (1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations;
>
> (2) to allow redress for a contracting party's bad-faith performance of an agreement, when it is a pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term; and
>
> (3) to rectify a party's unfair exercise of discretion regarding its contract performance.

*Barows v. Chase Manhattan Mortg. Corp.*, 465 F.Supp.2d 347, 365 (D.N.J. 2006) (*citing Seidenberg*, 348 N.J. Super. at 257).

Alin's claim falls under the last of the three types of cognizable causes of action for breach of good faith and fair dealing, as he alleges that Honda unfairly exercised its discretion in not performing under the warranty by deciding not to notify Alin of the defects in the A/C system and by not covering the repair costs.

19

Additionally, Alin argues that his claim for breach of good faith and fair dealing alleges that "the A/C System fails *as a result of defects in material and workmanship* and therefore should have been covered under express warranty.  As such, this claim *would not be overriding* an express term in the contract, *but rather enforcing* that contractual right."  (Pls.' Br. 15) (emphasis in original.)  In addition to showing that his claim steers clear of the practice of re-casting a breach of contract claim as a breach of good faith and fair dealing claim, which is prohibited by *Sons of Thunder*, 148 N.J. at 420, Alin also shows how interrelated this claim is with the breach of warranty claim, which will survive this motion.  The Court will thus deny Honda's motion to dismiss Count III.

### 5.  Breach of Implied Warranty of Merchantability Claim

In Count II, Alin alleges that Honda breach its implied warranty of merchantability under the UCC, as codified in N.J.S.A. 12A:2-314(2), because his vehicle's "defective condition does not pass without objection in the trade."  (Compl. ¶ 42.)  Under New Jersey law, an implied warranty of merchantability arises in every sale involving goods.  *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358 (1960).  The term merchantability means that a product "satisf[ies] a minimum level of quality," *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997), or that it is "reasonably fit for the general purpose for which it is manufactured and sold."  *Henningsen*, 32 N.J. at 370.  The "general purpose" of a passenger vehicle is "providing transportation for its owner."  *Sheris*, 2008 WL 2354908, at *6; *In re Ford Ignition Switch Litig.*, 2001 WL 1266317, at *22.

In its moving brief, Honda argues that "[v]iewed against this standard, [Alin's] breach of implied warranty claim is clearly deficient" because a defect in an air conditioning unit, while inconvenient, does not render a vehicle unfit to provide transportation to its owner.  (Def.'s Br.

9.)  It also submits that where a plaintiff has driven a car for years without incident, he may not recover for a breach of the implied warranty of merchantability.  *See Sheris*, 2008 WL 2354908, at *6.  As such, Honda asserts that Alin, who did not allege deprivation of the use of his vehicle for any period of time, aside from when its A/C system was repaired, may not recover under the implied warranty.  (Def.'s Br. 10.)  Alin does not address this argument in his opposition.

A reading of the complaint shows that there is no allegation that the failure of the A/C system caused Alin's car to be unable to provide him transportation.  *See Sheris*, 2008 WL 2354908, at *6; *In re Ford Ignition Switch Litig.*, 2001 WL 1266317, at *22.  Accordingly, Count II is dismissed.

### 6.  Negligent Misrepresentation

In Count IV, Alin alleges in paragraph 52 that:

> [Honda] [n]egligently failed to disclose defect(s) and continuously made negligent misrepresentations regarding defect(s) in the Class Vehicles to Plaintiff and members of the Plaintiff Class during the sale, lease, or servicing of said vehicles.

(Compl. ¶ 52.)

He also alleges in paragraph 53 that:

> Defendant negligently advised the Plaintiff and members of the Plaintiff class that the failure of their A/C systems were due to "outside influence" and were not the result of a defect in the vehicle.

(*Id* ¶ 53.)

He further claims that he "relied on these misrepresentations and omissions in leasing the car, and, as a result, suffered damages by being forced to bear the cost to repair the defective parts."  (*Id.*)

Under established New Jersey law, a plaintiff may recover for negligent misrepresentation by establishing a negligently made incorrect statement, upon which he justifiably relied, and as a consequence of the reliance sustained economic loss.  *See McClellan*

*v. Feit*, 376 N.J. Super. 305, 317 (App. Div. 2005) (*citing H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334 (1983)).  While an act of omission may constitute a viable negligent misrepresentation claim, s*ee South Broward Hosp. Dist. v. MedQuist, Inc.*, 516 F. Supp. 2d 370, 397 (D.N.J. 2007), a plaintiff may not bring such a claim "unless the breaching party owes an independent duty imposed by law."  *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 315 (2002).

In New Jersey, a duty to disclose arises:  (1) when a fiduciary relationship exists between the parties; (2) when the transaction is intrinsically fiduciary in that it calls for food faith and full disclosure; and (3) and when one party expressly reposes a special trust or confidence in the other.  *Id.*.  In *Green v. GMC*, 2003 WL 21730592 (N.J. Super. Ct. App. Div. July 10, 2003), car owners brought suit against GMC for an alleged design defect in the cars' front seats, which rendered seat belts ineffective and made the cars unreasonably dangerous in crashes.  In their suit, the plaintiffs brought multiple causes of action against GMC, including a negligent misrepresentation claim.  *Id.* The appellate division affirmed trial court's dismissal of the negligent misrepresentation claim because no affirmative duty was imposed on GMC, the car manufacturer, to disclose information regarding the seat design.  *Id.* at *8.  It reasoned that because "no fiduciary or implied fiduciary relationship existed between plaintiffs and the manufacturers of their cars, and since neither defendants nor the dealers from whom plaintiffs purchased their cars did anything to encourage plaintiffs to repose special trust or confidence in their advice, thereby inducing plaintiffs' reliance," the claim could not stand.  *Id.*

Similarly, Alin does not allege that the parties are in a fiduciary or intrinsically fiduciary relationship or that he reposed a special trust in Honda when he entered into his lease.  Instead, the facts alleged in the complaint indicate that the parties entered into an arm's length contract for the lease of his vehicle.  (*See* Compl. ¶ 18 ("Alin leased a 2007 Honda Odyssey automobile

22

from an authorized dealer in Denville, New Jersey.")) Accordingly, the allegations in paragraph 52 that Honda failed to disclose a defect during the sale, lease, or servicing of the Class Vehicles is insufficient to state a claim for negligent misrepresentation by omission.

Addressing the allegation in paragraph 53 that Honda affirmatively made negligent misrepresentations, Alin earlier averred in paragraph 20 that "Honda's customer service representatives and service personnel misrepresented the true facts to Alin and denied his warranty claim alleging that the damage was a result of 'outside influence.'" Because the Court is required to view the allegations in the complaint as true, Alin has sufficiently pleaded that Honda explained away the inherent defect in the A/C system with the representation that problems arose due to "outside influence" and were therefore not covered by the warranty. Taken in context with the other claims that the Court is sustaining, this is a colorable basis for the negligent misrepresentation claim, and Count IV will survive Honda's motion.

### 7. Unjust Enrichment

Count V alleges that Honda unjustly profited from the lease and sale of the Vehicles as a result of its failure to disclose alleged defects in the A/C system. (*Id.* ¶ 57.) Alin also claims that Honda was unjustly enriched by his purchase of Honda replacement parts and usage of Honda-authorized independent service centers for his car's repairs, because it did not cover the costs due under the terms of the written warranty. (*Id.* ¶¶ 58-59.)

Honda advances two arguments for dismissal of this claim: (1) Alin did not plead the requisite privity between himself and the company; and (2) unjust enrichment is unavailable because a legally subsisting express agreement governs the subject matter.

Under New Jersey law, to state a claim for unjust enrichment, a plaintiff must allege that: (1) a defendant received a benefit from the plaintiff; (2) retention of the benefit by the defendant

without payment would be unjust; (3) plaintiff expected remuneration from defendant at the time he performed or conferred a benefit on defendant; and (4) the failure of remuneration enriched the defendant beyond its contractual rights. *See VRG Corp. v. GKN Realty Co.*, 135 N.J. 539, 554 (1994). An unjust enrichment claim also requires a "direct relationship" between the parties or a mistake on the part of the party conferring the benefit. *Premier Pork LLC v. Westin, Inc.*, 2008 WL 724352, at *14–15 (D.N.J. Mar. 17, 2008) (Rodriguez, J.).

With respect to privity, Honda argues that it did not have a "direct relationship" with Alin because his payment to the West Caldwell service center did not flow to Honda, irrespective of whether the service center is considered an agent of the company. In New Jersey, a benefit conferred upon a retailer not sharing in profits with the product manufacturer does not result in the manufacturer's unjust enrichment. *See Cooper v. Samsung Electronics America, Inc.*, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008), where the plaintiff sued Samsung over a poorly performing flat screen television under multiple theories of contractual liability and unjust enrichment. In dismissing the unjust enrichment claim, Judge Linares found that because plaintiff alleged that his purchase was through a retailer, "there was no relationship conferring any direct benefit on Samsung through [plaintiff's] purchase." *Id.* Here, because Alin did not allege that the West Caldwell dealer gave, or was required to give, its profits from the purchase to Honda, he failed to properly plead a direct relationship between the parties.

Alin argues that the direct relationship between Honda and himself was established when he leased the vehicle and received Honda's express written warranty. (Pl.'s Br. 19.) Although he did not directly contract with Honda, he contends that when he ordered repairs and purchased parts from the West Caldwell dealership, privity was established between him and Honda on an agency theory. (*Id.*) He further argues that an agent/master relationship between Honda and the

West Caldwell dealership was created by Honda's express warranty that directed purchasers/lessees to visit any authorized Honda dealer for repairs.  (*Id.*)  Alin relies on *Ryan v. American Honda Motor Corporation* to show that New Jersey courts find that "new car warranty obligations are provided directly by the manufacturer to the ultimate consumers through the dealer."  (*Id.* (*citing* 376 N.J. Super. 185, 195 (App. Div. 2005.)))  *Ryan*, however, does not pertain to an unjust enrichment claim or the issue of privity.  Rather, in interpreting the text of the federal Moss-Magnuson Act, the *Ryan* court broadly construed the terms "supplier" and "buyer" used in the statute to hold that a lessee may bring a breach of implied warranty of merchantability claim against a lessor under the statute.  376 N.J. Super. at 195 (*interpreting* 15 U.S.C.A. § 2301(3)).  Alin does not cite to any other authority to show that a "direct relationship" exists between himself and Honda for purposes of his unjust enrichment claim, and the Court is not persuaded by his argument.

Moreover, a party who is unjustly enriched must have benefits conferred upon it in excess of those it was already due under its contractual rights.  *See Premier Pork*, 2008 WL 724352, at *14–15.  In *Premier Pork*, a pork company sued "various individuals and entities in order to obtain compensation for pork bellies it sold" to an insolvent company, to which it was a creditor.  *Id.* at *1.  Judge Rodriguez dismissed the unjust enrichment count because it "relates to the exact same subject matter as the sales agreements at issue in Plaintiff's breach of contract claim."  *Id.*  Similarly, Alin does not identify how his unjust enrichment claim pertains to any benefit conferred upon Honda that extended beyond what it was arguably already due under the lease agreement.

The Third Circuit has held that New Jersey law appears to preclude recovery for unjust enrichment where "there is a legally subsisting express agreement, no rescission is sought and no

contention that the express contract is void or did not exist." *Van Orman v. American Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982) (omitting internal quotations).

Alin argues that he is permitted to plead alternative theories of liability of both breach of contract and unjust enrichment.   He relies on *RehabCare Group East, Inc. v. Trenton Convalescent Operating Co.*, 2006 WL 2711496, at *3, fn 1 (D.N.J. Sept. 20, 2006), where Judge Thompson wrote:

> The Court refers Defendants to [FRCP] 8(e)(2) which allows a plaintiff to plead inconsistent causes of action.   At this nascent stage of the litigation *where it is unclear what, if any contract exists*, the Court is loathe to foreclose causes of action that Plaintiff has sufficiently pled, which may or may not be borne out of discovery.

(Emphasis added.)

Unlike in *RehabCare Group East*, where "it [was] unclear what, if any contract exist[ed]," the express warranty at issue here was not alleged to be formed invalidly, rescinded, nor voided.   In *In re Prudential Insurance Company of America Sales Practices Litigation,* 975 F.Supp. 584, 591–92 (D.N.J. 1996), which Alin also cites, the court allowed alternative pleadings to proceed because plaintiffs alleged that they were fraudulently induced to enter into insurance contracts and it was unclear from the pleadings whether those contracts were valid and enforceable. *Id.* at 621–22.   The validity of Alin's contract is undisputed.

Honda's motion to dismiss Count V is granted.

**8.   Injunctive Relief**

In Count VIII, Alin seeks injunctive relief from the Court in the form of preliminary and permanent injunctions. Honda correctly points out that Alin has not moved for a preliminary injunction.   It also correctly identifies that the relief requested is not intended to preserve a status quo but to provide final relief.

Count VIII seeks injunctive relief requiring Honda to

26

> (1) Notify all members of the Plaintiff Class of the aforesaid defect(s), (2) institute a comprehensive recall of the Class Vehicles, (3) inspect all Class vehicles currently owned or leased by members of the Plaintiff Class to determine the nature and extent of the defect(s) and necessary repairs for each vehicle inspected, (4) fully and properly repair all Class Vehicles, as required at [Honda's] full expense, (5) provide ongoing annual inspections of all Class Vehicles owned by members of the Plaintiff Class to determine the nature and extent of the defect(s) and necessary repairs of each vehicle inspected, (6) take all necessary steps to modify the design, manufacture, and quality control for the Class Vehicles, to prevent the aforesaid defect(s) from arising in any of the Class Vehicle models in the future.

(Compl. ¶ 74a.)

> To obtain a preliminary injunction, a plaintiff must demonstrate:

> (1) that they are reasonably likely to prevail eventually in the litigation and (2) that they are likely to suffer irreparable injury without relief.  If these two threshold showings are made the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendant] more than denying relief would harm the plaintiff[] and (4) whether granting relief would serve the public interest.

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002).

For a permanent injunction, New Jersey courts require that a plaintiff meet its burden of showing that a "legal right to such relief has been established" and that an "injunction is necessary to prevent a continuing irreparable injury." *Verna v. Links at Valleybrook Neighborhood Ass'n, Inc.*, 371 N.J. Super. 77, 89 (App. Div. 2004).

In this opinion, the Court has determined that Alin has adequately pleaded a "legal right to relief." Honda argues, however, that plaintiff is complaining about purely monetary injury, and it cites authority that holds economic injury is not irreparable.  (Def.'s Br. 25-26.)  Paragraph 74 of the complaint asserts, "[i]njunctive relief is appropriate and necessary to remedy Defendants' wrongful conduct and to prevent Defendants from continuing their wrongful conduct."  As a practical matter, should Alin prevail, Honda's responsibilities may encompass more than a money payout.  The nature of the lawsuit embraces a variety of remedies, some of

which may be in the form of injunctive relief, and under the standards governing a motion to dismiss, the Court concludes dismissal of Count VIII is not warranted.

## V.  CONCLUSION

For the foregoing reasons, the Court will deny Honda's motion to dismiss Counts I, III, IV, VI, VII, and VIII of the complaint and will grant the motion as to Counts II and V under FRCP 12(b)(6).  Those Counts will be dismissed.  An appropriate order will be entered.

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

28