Forrest Scott Turkish
595 Broadway
Bayonne, New Jersey 07002
(201) 339-8866

Gary W. Sibley
The Sibley Firm
2414 N. Akard, Suite 700
Dallas, Texas 75201
Phone: 214-522-5222
Fax: 214-855-7878

**ATTORNEYS FOR OBJECTOR
ANDREW KAYE**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JON ALIN, ROBERT LOUGHEAD, and PAUL FELDMAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HONDA MOTOR COMPANY, LTD., AMERICAN HONDA MOTOR COMPANY, INC., HONDA NORTH AMERICA, INC., HONDA OF AMERICA MANUFACTURING, INC., HONDA MANUFACTURING OF ALABAMA, LLC, And HONDA ENGINEERING NORTH AMERICA, INC., <br><br> Defendants. | Civil Action No. 08-4825 (KSH) <br><br><br> **ANDREW KAYE'S OBJECTION TO PROPOSED SETTLEMENT** |

TO THE HONORABLE JUDGE KATHARINE S. HAYDEN:

ANDREW KAYE'S OBJECTION TO PROPOSED SETTLEMENT - Page 1 of 19

1. ANDREW KAYE ("Objector") objects to the proposed settlement ("the Settlement") in *Jon Alin, et al. v. Honda Motor Company, Ltd.*, 2:08-cv-4825, U.S. District Court, District of New Jersey.

2. Objector intends to appear at the Final Approval Hearing in person and through counsel. He requests to speak concerning his objections to the Settlement and otherwise participate in the Fairness Hearing.

## I. Objector is a Class Member

3. Objector declares that he has reviewed the Settlement Class definition and is a class member. He received by United States mail a notice of this settlement entitled "Notice of Proposed Class Action Settlement."

4. Objector's current address is c/o 2414 North Akard Street, Suite 700, Dallas, TX 75201.

5. Objector may be reached by telephone at (214) 522-5222.

6. Objector acquired his 2006 Honda Odyssey, Vehicle Identification Number 5FNRL382X6B101563 in July, 2006.

7. The Settlement is not fair, reasonable, or adequate and Objector objects to the proposed Settlement for the following reasons:

## II. Objection to Class Notice

8. The proposed Notice Plan, as outlined in Article 8 of the Settlement Agreement and Article III of the Order Granting Preliminary Approval of Class Settlement, Directing Notice to the Settlement Class, and Scheduling Fairness Hearing, does not meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) because the notice given was not the best notice practicable under the circumstances. While Rule 23 does not require the parties to exhaust every conceivable method

of identifying individual class members, it does require that class members are entitled to individual notice where possible and at minimum the best possible notice under the circumstances. If class members' names and addresses cannot be determined by reasonable efforts, notification by publication is sufficient. "In the event specific names and addresses are unattainable, however, 'notice by publication will suffice under Rule 23(c)(2) and under the due process clause." *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 325 (E.D. Pa.1993) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317–18 (1950))." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 474 (E.D. Pa. 2000).

9. This Settlement relies completely on Defendant Honda's customer service database containing only those persons who actually contacted Honda to complain about their treatment, a subset of the persons actually damaged in this suit. No email communication is to be attempted and no provision is made for notice of the Settlement on Defendant Honda's website under the proposed plan. No provision is made for any advertisement of the Settlement or Settlement website in any publication (newspaper, magazine, etc.). In effect, the Notice Plan says it will not reach any class members who are not in Defendant Honda's complaint database, are not personally known to Class Counsel (who admit to identifying class members primarily using the information given to them by Honda), and for whom postal notice is otherwise unsuccessful. In their Fee Petition, Class' Counsel admit they can speak only in terms of minimum claims and participation in the Settlement. Their only source of potential class members' names is the information from Honda's database. The names in the database are only those owners who complained to Honda. Therefore, the majority of the potential class – the "non-complainers" have received no notice. Apparently, no notice was even attempted for the vast majority of the class not on Honda's list.

10. Notice to prior owners is particularly important because the Settlement covers vehicle model years dating back ten years, to 2002. There is a considerable possibility that a vehicle might have been sold, at least once, to a person not in Honda's database or otherwise traceable via the means set out in the Settlement. Should the Notice Plan's meager attempts at notice fail, no other efforts will be made.

11. The Federal Judicial Center (http://www.fjc.gov) includes a section entitled "Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide 2010." This article suggests proper notice should reach 70–95% of members in a class action. The Notice Plan in this settlement appears mortally deficient in this regard. According to this document, census data shows a substantial number of class members (14%–17% per year) move frequently. This substantially raises the difficulty of reliable mail notification, especially for claimants that purchased their Class Vehicle several years ago and may have moved more than once.

12. The Notice Plan must be improved if the Settlement is to be fair and adequate, or potentially reach all persons affected by the Settlement. Objector suggests the following changes:

   i. Placing links on Honda's websites directing inquiries to the Settlement website;

   ii. Placing banners on Honda's websites giving notice of the Settlement and linking to the Settlement website;

   iii. Publication of notice of the Settlement in at least two nationally circulated news periodicals;

   iv. Publication of notice of the Settlement in at least one nationally circulated automobile enthusiast periodical;

    v.      Requiring that conspicuous notice of the Settlement be posted in Honda's service departments and/or franchise dealers; and

    vi.    Dispatching email notice to any persons potentially affected by the Settlement for whom Honda or Class Counsel have, or reasonably should be able to have, email contact information.

13.     The simple steps outlined above are of negligible expense and would significantly improve the Notice Plan and ensure greater notice to class members. The Notice Plan, as presented, does not come close to giving the notice required by Fed. R. Civ. P. 23(c).

### III.   Objections to Intra-Class Conflicts Violating the U.S. Supreme Court's Intra-Class Equity Requirements and Barring Settlement Approval

14.     The United States Supreme Court requires "intraclass equity" in any settlement, notwithstanding the class's common interest in "achieving a global settlement." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858, 863 (1999). The court's preliminary approval of the Settlement ignores this binding requirement.

15.     This Settlement unfairly and arbitrarily benefits some class members at the expense of others without any justification that satisfies Fed. R. Civ. P. 23(a)'s certification requirements. In particular, this Settlement is unfair because it prejudices the members of the Odyssey Sub-Class as compared to the TSX and CR-V Sub-Classes. The Odyssey Sub-Class must release all its claims against Honda. In return, they are only entitled under the Settlement to (a) full reimbursement of out-of-pocket expenses to repair condenser road debris damage only if damage occurred within the original 36,000 mile/3-year warranty period, even if the vehicle in question was covered by a valid Extended Service Contract and (b) reimbursement up to the full MSRP ($35.06) of the cost of a protective screen meant to prevent Condenser Road Debris

Damage in the future and (c) a reimbursement of $20 off the labor costs of installation if the screen is purchased and installed on an Odyssey covered by the Settlement. Class members must submit a claim form to receive these reimbursements, making them analogous to rebate coupons. Crucially, Odyssey Sub-Class members who suffered damage out-of-warranty receive no reimbursement for out-of-pocket and labor expenses which average from $500–$1500. Instead, such persons will only have the right to be reimbursed up to $55.06.

16. By contrast, without any explanation of why they receive preferential treatment, the Settlement gives Honda CR-V claimants in-warranty reimbursement for their out-of-pocket expenses for Compressor Damage within the original warranty period under the terms of the warranties, even if no warranty claim was ever properly pursued. In addition, and without explanation for why Odyssey owners were not given this massive benefit, the Settlement grants CR-V Sub-Class Members damaged outside their warranty generous prorated out-of-pocket expense reimbursement for compressor damage repair occurring within 8 years/96,000 miles from the date of purchase; from 80% reimbursement in year 4 to 15% reimbursement in year 8.

17. The TSX Sub-Class benefits from a nearly identical arrangement to the CR-V Sub-Class. The only significant difference is the prorating schedule, which is necessarily altered to take the TSX's longer warranty (4 years vs. 3 years for the Odyssey and CR-V) into account. Both CR-V and TSX Sub-Class members are still required to file claim forms for reimbursement, making them subject to a de facto rebate coupon settlement. No explanation is offered anywhere in the Settlement for why out-of-warranty CR-V and TSX owners receive any out-of-pocket expense recovery, while Odyssey owners damaged outside their warranty get nothing.

18. These settlement terms are especially jarring and suspicious given that the Odyssey Sub-class' representative, who never had to endure a deposition or any other great inconvenience associated with this litigation, will receive up to $10,000 more in "incentive payments" than the representatives for the TSX and CR-V subclasses, yet the Odyssey Sub-Class Members received a dramatically lesser benefit under the Settlement. This appears to be a bribe for Alin's acquiescence in a Settlement plainly unfair and inequitable to his Sub-Class. Such high likelihood of collusion between a purported class representative and opposing parties calls for increased scrutiny, and where collusion exists absolute denial of class certification. *Hansberry*, 311 U.S. at 45; *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010); *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 795, 799, 805, 820 (3d Cir. 1995); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007).

19. Objector requests the court modify the proposed Settlement to dispose of these glaring and manifestly inequitable provisions by imposing equivalent, prorated out-of-pocket expense recovery for Odyssey Class Members, and demanding Class Counsel justify any incentive award to Class Representative Alin. Additionally, the tainted class should be bifurcated under new class representatives and be awarded the same relief as the other subclass.

20. Though the clear inequity demonstrated above is ample reason to find the settlement unfair and inequitable, the Settlement – and Odyssey Subclass in particular – also embody failures of Rule 23(a)(3)–(4)'s typicality and adequacy of representation requirements.

IV. **Subclasses Must Comply with Rule 23(a) Certification Requirements**

21. Subclasses are appropriate where a class includes groups divergent in interest. Fed. R. Civ. P. 23(a); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010).

Further, "when appropriate . . . (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." Fed. R. Civ. P. 23(c)(4). These statutes and case law, taken together, require all subclasses in a class action to comply with Rule 23(a) certification requirements as though they were regular classes. Fed. R. Civ. P. 23(c)(5); *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 271 (3d Cir. 2009); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 449 n.4 (D.N.J. 2009).

22. Purported fairness alone cannot substitute for meeting Rule 23's certification requirements. Certifying a class merely because it is fair is a clear error of law. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622 (1997). Crucially, before allowing a case to go forward as a class action a court must make all necessary legal and factual probes and consider all relevant evidence and arguments presented by the parties to ensure all of Rule 23(a)'s requirements are met. If they are not, the action cannot be certified as a class action. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

23. As explained in Sections V–VI below, the Honda Subclass fails to comply with Rule 23(a) and thus Settlement class certification was improper in this case.

V. **Objection to Failure of Rule 23(a)(3) Typicality in the Odyssey Subclass**

24. Typicality requires representative parties' claims and defenses to be typical of the class. Fed. R. Civ. P. 23(a)(3); *Amchem Prods., Inc.*, 521 U.S. at 613. Commonality and typicality tend to merge due to sharing the same purpose — tools to determine under the circumstances "whether . . . maintenance of a class action is economical and . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members

will be fairly and adequately protected in their absence" — yet both are distinct requirements a potential certification must satisfy. *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); FED. R. CIV. P. 23(a)(2)–(a)(3). The typicality requirement ensures named plaintiffs have incentives aligned with absent class members in order that the absent members' interests will be fairly represented. *Danvers Motor Co., v. Ford Motor Co.*, 543 F.3d 141, 149-50 (3d Cir. 2008). Typicality necessary for class certification only exists where "[1] the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of the class members and [2] are based on the same legal theory." *Id.* at 150. Typicality requires, at minimum, strong similarity between the legal theories utilized by the class representative and the rest of the class. *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). Further, typicality must be determined with regard to the defendant's actions, not his potential defenses against individual class members. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). If class members likely need to pursue differing, possibly conflicting legal theories to succeed, under Third Circuit law the class lacks sufficient typicality. *Danvers Motor Co.*, 543 F.3d at 150.

25.   By the terms of the Settlement, and the Court's own Amended Order Granting Preliminary Approval of Class Settlement, Directing Notice to the Settlement Class, and Scheduling Fairness Hearing, the requisite typicality does not exist within the Odyssey Sub-Class. Class Representative Alin's Honda Odyssey was in warranty when he sustained the covered damage; indeed, his complaint arose from the fact Honda refused to fix his condenser road debris damage under his original 3 year/36,000 warranty. His incentive for filing suit was to attain compensation for Honda's failure to repair his damaged condenser under warranty. Yet the members of the Odyssey Sub-Class who were out-of-warranty at the time of their condenser road debris damage have a very different incentive to compensation outside the warranty period for

the out-of-pocket expenses necessary to return their air conditioners to working order. It should come as no surprise, then, that Class Representative Alin acquiesced to a settlement that fully compensated him and the other in-warranty Odyssey Subclass members while throwing all other members of the putative Odyssey Sub-Class under the bus. Class Representative Alin allowed his personal incentives to shape his decision to agree to a materially lesser settlement (Honda is saving huge amounts of money by not paying out-of-pocket expenses to Odyssey owners whose warranties ran out before the damage occurred), at the expense of the out-of-warranty Odyssey owners he was supposed to fairly represent. This violates the guiding principle of typicality under *Danvers*.

26. It is impossible to say recovery for the whole Honda Odyssey Sub-Class in this Settlement is based on the same legal theory, as required by *Danvers*. There must be "strong similarity" between the theory of recovery used by Class Representative Alin and the rest of the subclass. Because Alin's condenser and air conditioner were damaged "in warranty," he relies on the theory of breach of express warranty. By definition, the out-of-warranty Odyssey subclass cannot rely on the express warranty claim. Further, there is no indication in the Second Amended Complaint which of the Second through Eighth Counts may entitle out out-of-warranty class members compensation. Under these circumstances, it is impossible to say there is any "strong similarity" between the legal theories of Sub-Class Representative Alin and the entirety of the subclass, especially the out-of-warranty members. Indeed, under *Danvers* the Third Circuit has found a lack of commonality where subclass members <u>likely</u> need to pursue differing, possibly conflicting legal theories to succeed. Here, the in-warranty and out-of-warranty Odyssey Sub-Class members <u>must</u> pursue differing legal theories to succeed on the merits as a matter of law.

27. Typicality does not exist under Rule 23(a)(3) and binding U.S. Supreme Court and Third Circuit case law. This subclass should never have been certified.

VI. **Objections to Class Representative for the Odyssey Subclass: Failure of Adequate Representation Under Fed. R. Civ. P. 23(a)(4)**

28. Subclasses cannot be certified unless the named subclass representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Supreme Court mandates that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Dukes*, 131 S. Ct. at 2550. This requirement seeks to root out conflicts of interest between the named party and the class he wishes to represent and denies certification where conflicts exist. *Amchem*, 521 U.S. at 625. This assures absent class members' interests are adequately represented — otherwise, it would be unfair to bind them to any release and settlement. *Id.* at 621. The Third Circuit imposes a two-part test to determine if a class representative satisfies the adequacy of representation requirement: a certifying court must find "[1] the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, . . . and [2] that there is no conflict of interest between the individuals' claims and those asserted on behalf of the class." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988). This inquiry is crucially important, as "'class members with divergent or conflicting interests [from the named plaintiffs and class counsel] cannot be adequately represented . . .'" *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 291-92 (3d Cir. 2010); *In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 395 (3d Cir. 2004). Further, Rule 23(a)(4)'s requirement of close examination of adequacy of representation is especially great where, as here, attorney's fees will far exceed the class representative's recovery. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003).

29. Adequacy of representation requires they must "share common objectives and legal or factual positions." *In re Tetracycline Cases*, 107 F.R.D. 719, 730 (W.D. Mo. 1985); *Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 66 F.R.D. 581, 588 (E.D. Pa. 1975).

30. Conflicts of interest between the named class representatives and absent class members destroy adequacy of representation. *Amchem*, 521 U.S. at 625; *In re Diet Drugs*, 431 F.3d at 145 (3d Cir. 2005). District courts in the Third Circuit must find representation inadequate where representatives have interests that are antagonistic to other class members. *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006). Existence of antagonism or conflicts between a representative and any of the other class members is a critical factor in finding inadequacy under Rule 23(a)(4). *Id.* Allowing a representative with antagonistic interests to represent the class is a denial of due process; *Hansberry v. Lee*, 311 U.S. 32, 44-45 (1940). In a class action, the plaintiffs have the burden to show they have no conflicts or antagonistic interests with the subclass as a whole. *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 456 (D.N.J. 2009); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 519 (D.N.J.1997). Further, to destroy adequacy of representation such conflicts must be fundamental, going to the heart of the litigation. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006); 6 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 18:14 (4th ed.2002). Fundamental conflicts exist where non-compensated class members are harmed by the same conduct for which other members of the class received compensation. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). When this happens, named representatives cannot vigorously prosecute the interests of the class because their interests are actually or potentially antagonistic and in conflict with the interests and objectives of other class members. *Id.*

> "A 'fundamental conflict' exists among a class, rendering certification inappropriate on the grounds that the class is not adequately represented, where some party members claim to have been harmed by the same conduct that benefited other members of the class, as in such a situation, the named representatives cannot vigorously prosecute the interests of the class through qualified counsel because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members."

32B Am. Jur. 2d Federal Courts § 1653 (citing *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003)).

> "With respect to the adequacy of representation requirement, the existence of antagonistic groups within a proposed class is not remedied by naming as a representative a member of one of those antagonistic groups."

32B Am. Jur. 2d Federal Courts § 1653 (citing *Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.*, 439 F.3d 165, 172 (2d Cir. 2006)).

31. Certification of the Odyssey Sub-Class with Alin as Class Representative could only be possible if the court ignored his antagonism to much, if not most, of the class. The court would also have to ignore the fact that much, if not most, of the class went unrepresented. A person not covered by warranty cannot help but possess a different interest and suffer a different injury than a person covered by a warranty. This represents an impermissible conflict of interest between Alin as an individual and the portion of the Odyssey Sub-Class that incurred condenser damage outside the 3-year warranty period, in violation of *Amchem*, *Dukes*, and *Hassine*. Seeking to obtain full recovery for out-of-pocket expenses for in-warranty Sub-Class members, who include Alin himself, and only parts and labor reimbursements for out-of-warranty Sub-Class members demonstrates impermissible, divergent, conflicting interests between the Sub-Class Representative and the Sub-Class under *In re Cmty. Bank* and *In re Diet Drugs*. Scrutiny of adequacy of representation should be further heightened in this case, as in *London*, because if this Settlement is approved Class Counsel will receive more than $2.4 million dollars and Alin will receive a maximum of $12,500 in incentive payments plus whatever out-of-pocket expenses he expended to repair his condenser. Further, Alin's attempt to recover full out-of-pocket

expenses in the Settlement for in-warranty Sub-Class members (worth anywhere from $500 to $1500), while leaving out-of-warranty Sub-Class members with nothing save a rebate[1], demonstrates clear antagonism and conflict of interest. Alin, having incurred his damage under warranty, has every incentive to throw the out-of-warranty members of his Sub-Class under the bus to ensure his own full recovery and incentive payment, in clear violation of *Beck*. This is a fundamental conflict of interest under *Valley Drug*. Out-of-warranty Sub-Class members will be harmed — forever releasing any legal claim to full recovery of their out-of-pocket expenses in exchange for no more than $55.06 in rebates — by Alin's acceptance of the Settlement. On the other hand, Alin and other in-warranty Sub-Class members will fully recover their out-of-pocket expenses *and* the parts and labor rebates. The Settlement offers no explanation for the inequitable dichotomy between the prorated out-of-pocket expense recovery granted to TSX and CR-V owners (as amply demonstrated in Part III, above) and no out-of-pocket expense for Odyssey owners. Should this Settlement be approved, it will bind persons whose interests are antagonistic to Alin, their representative. Such a situation is a clear violation of due process under *Hansberry*. It is Class Representative Alin's responsibility and burden to affirmatively prove he does not bear any interest antagonistic to the class under *Rowe* and *Prudential*, which he has plainly failed to do.

32. Under the foregoing, adequacy of representation does not exist under Rule 23(a)(4) and binding U.S. Supreme Court and Third Circuit case law. At this date, merely naming an out-of-warranty class member to be a substitute representative for the Odyssey Sub-Class is not sufficient to correct the problem under *Amchem*. This subclass should never have been certified.

---

[1] Coupon-style opportunity for reimbursement of comparatively paltry parts and labor expenses not exceeding $55.06.

33. The root problem with this class action is that the common defect was a design defect, not a warranty issue. In attempting to insert the proverbial square peg in the round hole this action fails miserably.

## VII. Class Counsel's Requested Attorney Fees are Unreasonable Because the Value of the Settlement to the Class is Impermissibly Overstated

34. In their Fee Petition, Class Counsel values the Settlement at $38,524,652.00. This dramatically overstates the actual value of the Settlement to the class members. In reviewing a proposed settlement it is the role of the District Judge to protect the class's interests, acting as a fiduciary for the class. *In re Rite Aid Corp Securities Litigation*, 396 F.3d 294, 307 (3d Cir 2005). The actual value to the class warrants careful scrutiny and additional information from the parties. While the Plaintiff Class' expert placed the value of the settlement to class members at no less than 38.5 million dollars, plus an estimated $2 million in administrative expenses, the Court should not accept that valuation because it places: (1) a 100% claims rate for the value of the Odyssey condenser screen and labor reimbursements; (2) a 40% reimbursement rate for CR-V subclass members; and (3) a 30% reimbursement rate for the TSX subclass. By Class Counsel's own admission, the quoted TSX and CR-V reimbursement rates do not accurately represent the actual expected reimbursement rate, but rather an average based on the tiered relief structure for in-warranty and prorated out-of-warranty TSX and CR-V owners. Experience has demonstrated that actual claim rates in coupon settlements is miniscule. And because this Settlement is nothing but a system of reimbursement claims, it is fully analogous to a rebate coupon settlement. Thus, Class Counsel's attempt to value the class with inflated projected participation rates is clearly unreasonable: the average redemption rate for coupons issued by corporations in marketing programs is very low, approximately two percent; similarly, class

action coupon redemption rates are inherently infinitesimal. *Panel 3: Clear Notices, Claims Administration, and Market Makers*, 18 Geo. J. Legal Ethics 1223, 1235 (2005). Similarly, claims-made settlements in general see only very, very low redemption rates. *Id.* at 1235. So whether one views this Settlement as a pure claims-made settlement or a rebate coupon settlement, the projected 30%–100% redemption rates in Class Counsel's fee petition are naked and egregious overestimations, especially the 100% estimation for the Odyssey Sub-Class, designed to inflate the Settlement's notional value to the class for purposes of calculating Class Counsel's fee award, with full knowledge that real-world claim redemption rates will be far lower. It cannot be allowed.

35. The only way to reliably calculate the actual value to the Settlement Class in this case is thus to base the calculation on the number of actual, successful reimbursement claims.

36. As explained above, Class Counsel provides no rationale anywhere in the Settlement Agreement – or in any other document – for prorating recovery of out-of-warranty TSX and CR-V claims but no out-of-warranty compensation for Odyssey claims. This renders the entire relief structure arbitrary and unfair, and thus renders any fee valuation based on these numbers unfair and unreasonable. It would be far more appropriate and reasonable to value the Settlement based on the claims that are actually filed and honored, as this would unquestionably be the real value of the Settlement.

37. Further, in practical effect this Settlement is a sales promotion for Honda and any service providers obligated to honor the reimbursement claim forms. Reimbursement will lure already injured consumers back to the merchants who have already sold them defective wares. In effect, the recovery plan awards the malfeasor by luring the class back to buy more product. Because it is the nature of salespersons to attempt to aggressively upsell customers — especially

those that come in with coupons or rebates — it is highly likely class members will find themselves pressured to spend more money to buy products not related to the Settlement. If a service department discovers something wrong with a vehicle brought in for repair under the Settlement — or claims to find something wrong — the class member who brought in the vehicle could easily find herself spending more money out of pocket that she will be reimbursed under the Settlement. Either case represents a risk of real loss under the Settlement, and contributes to the Settlement value's over-inflation and the attorney fees' unreasonableness.

38. Under the foregoing, the attorney fee petition in this Settlement is unreasonable because the Settlement is over-valued. The Settlement should not receive final approval until the court has taken steps to remedy these valuation errors.

## IX. Conclusion: Objector Adopts All Valid Objections Made By Any Other Objector

39. Objector adopts all valid objections made by any other objector and will supplement this objection accordingly.

Wherefore, Objector Andrew Kaye prays that the Court deny the proposed Settlement, deny the requested fees to Class Counsel and grant Objector such other and further relief as to which Objector may be entitled.

Respectfully submitted,

*/s/ Forrest Scott Turkish*

Forrest Scott Turkish
595 Broadway
Bayonne, New Jersey 07002
(201) 339-8866
fsturkish@aol.com

_____
Gary W. Sibley
Pro Hac Vice
The Sibley Firm
Texas State Bar No. 18337700
2414 N. Akard, Suite 700
Dallas, Texas 75201
Phone: 214-522-5222
Fax: 214-855-7878

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served by U.S. Mail to the persons listed below on February 27, 2012.

_____
Gary W. Sibley

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served by ECF to the persons listed below on February 27, 2012.

_____
Forrest Scott Turkish

<u>Clerk of the Court</u>
District of New Jersey
Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

ANDREW KAYE'S OBJECTION TO PROPOSED SETTLEMENT - Page 18 of 19

<u>Class Counsel</u>
David Mazie, Esq.
Mathew R. Mendelsohn, Esq.
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, NJ 07068

Richard E. Norman, Esq.
Crowley Norman LLP
Three Riverway
Suite 1775
Houston, TX 77056

<u>Honda Counsel</u>
David B. Johnson, Esq.
Sidley Austin, LLP
One South Dearborn
Chicago, Il 60603